UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| BETTINA L. FARREN; STEVE FARREN, | No. 2:16-cv-01077-JAM-DB |
|---|---|
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| SELECT PORTFOLIO SERVICING, INC.; US BANK AS TRUSTEE ON BEHALF OF THE HOLDERS OF THE WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-HY6; JPMORGAN CHASE BANK, N.A.; QUALITY LOAN SERVICE CORPORATION; and Does 1 through 50, inclusive, | |
| Defendants. | |

This matter is before the Court on Select Portfolio Servicing, Inc.'s and US Bank as Trust on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2007-HY6's (collectively "Defendants") Motion to Dismiss. Bettina L. Farren and Steve Farren ("Plaintiffs") sued Defendants for various claims connected to the mortgage secured by their residence. For the reasons explained below, the Court grants Defendants' Motion

1

to Dismiss with prejudice.[1]

### I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The following allegations are taken as true for the purposes of this motion:

On March 23, 2007, Plaintiffs executed a Deed of Trust ("DOT") in favor of Washington Mutual Bank, FA, securing a loan of $1,464,000 with their property located at 2045 Salmon Falls Road, El Dorado Hills, CA 95862 ("Property"). Second Amended Complaint ("SAC") at ¶¶ 2, 12; see DOT, SAC at Exh. 1. The DOT defined the "Borrower" as "Steven Farren and Bettina L. Farren, husband and wife and Stephen R. Hinrichs and Janine G. Hinrichs, husband and wife by deed which recites 'as to an undivided 50% interest, all as tenants in common[.]'" DOT at 1. Plaintiffs signed and executed an Adjustable Rate Note ("Note") concurrently with the Deed of Trust; however, Plaintiffs do not have a copy of the Note they signed. SAC at ¶ 12, 19. Plaintiffs did not retain a copy of either document but subsequently obtained a copy of the Deed of Trust, which was recorded at the County Recorder's office. SAC at ¶ 19. Plaintiffs provide the Court with a copy of an Adjustable Rate Note signed by only Stephen R. Henrichs and Janine G. Henrichs, not the Farrens. SAC at Exh. 8. Additionally, Plaintiffs executed a Fixed/Adjustable Rate Rider and a Second Home Rider, which they also have signed copies of and on which Plaintiffs are listed as Borrowers. SAC at ¶ 12;

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for February 7, 2017.

2

1  Exh. 2, 3. Plaintiffs executed the Second Home Rider to
2  acknowledge that the Property is a Second Home to the Henrichs.
3  SAC at ¶ 44. Plaintiffs claim that the home was their primary
4  residence. Id.; SAC at ¶ 9.
5     At some point after that transaction, but before December 8,
6  2008, Chase became the successor to Washington Mutual Bank, FA.
7  SAC at ¶ 20. Then, on December 8, 2008, Chase caused a Notice of
8  Default to be issued against the Property. SAC at ¶ 21. On the
9  same day, Chase assigned the Deed of Trust and Note to LaSalle
10 Bank NA as trustee for WaMu Mortgage Pass-Through Certificates,
11 Series 2007—HY6. SAC at ¶ 22; Exh. 5. US Bank NA succeeded
12 LaSalle Bank in interest as trustee for the WaMu Mortgage Pass-
13 Through Certificates. SAC at ¶ 24. Chase continued to be the
14 servicer of the loan throughout these transfers until, at a date
15 unknown to Plaintiffs, Select Portfolio Servicing, Inc. ("SPS")
16 became the servicer. Id. at ¶¶ 20, 22. On January 4, 2016,
17 Quality Loan Service Corporation ("Quality") became the successor
18 trustee of the DOT. SAC at ¶ 27. At SPS's direction, Quality
19 issued and caused to be recorded a Notice of Trustee's Sale of
20 the Property on March 18, 2016. SAC at ¶ 28.
21    Plaintiffs originally filed suit in the Superior Court of
22 the State of California for the County of El Dorado on April 12,
23 2016. Notice of Removal at ¶ 1, ECF No. 1. Chase removed the
24 case to federal court on May 19, 2016, after which Plaintiffs
25 requested, but were denied, a Temporary Restraining Order to
26 enjoin the foreclosure trustee's sale. ECF Nos. 1, 13, 16.
27 Plaintiffs submitted their First Amended Complaint on July 22,
28 2016, ECF No. 17, which this Court dismissed with leave to amend

on November 22, 2016, ECF No. 33.  The Court also dismissed Plaintiffs' claims against JPMorgan Chase Bank, N.A., with prejudice.  ECF No. 34.  Plaintiffs filed their Second Amended Complaint in December, removing the claim for declaratory relief—previously identified as Count 1 and which was dismissed with prejudice—and alleging the facts more concretely.  ECF No. 35.

## II.  OPINION

### A.  Leave to Amend

"The court considers five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint."  U.S v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011).  "Although a district court should freely give leave to amend when justice so requires, the court's discretion to deny such leave is particularly broad where the plaintiff has previously amended its complaint."  Ecological Rights Foundation v. Pacific Gas and Elec. Co., 713 F.3d 502 (9th Cir. 2013) (citations and quotation marks omitted).

Plaintiffs have filed three versions of their Complaint in this action.  Additionally, Plaintiffs had notice of Defendant's arguments due to the previous Motion to Dismiss raising nearly identical issues.  See ECF Nos. 20, 28, & 31.  Thus, leave to amend is denied as to all dismissed causes of action.

///

///

///

B.  Analysis

    1.  The Underlying Note

This Court dismissed Plaintiffs' First Amended Complaint because Plaintiffs failed to plausibly allege that they signed the Note. See ECF No. 33. Defendants argue that the SAC remains deficient because Plaintiffs' allegations are "factually unsupported" and contradicted by the Note attached as an exhibit to their SAC. MTD at 5-6.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "When an attached exhibit contradicts the allegations in the pleadings, the contents of the exhibits trump the pleadings." Van Hook v. Curry, No. C 06-3148 PJH (PR), 2009 WL 773361, at *3 (N.D. Cal. Mar. 23, 2009).

Plaintiffs have plausibly alleged that they signed the Note. Beyond asserting this fact, they explain that they signed the Note concurrently with the Deed of Trust and they explain why they have a copy of the Deed of Trust but not the Note. They also allege that the Note they signed was lost, which is why only the Henrichs' signed copy of the Note is available. SAC at ¶ 104. The attached Note without their signatures does not contradict their allegations because they allege that the Note they signed has been lost. Defendants' arguments that Plaintiffs' allegations are unsupported are premature, as this

5

1  Court must take those allegations as true for the purposes of a
2  motion to dismiss.  However, these allegations are not enough to
3  support Plaintiffs' claims and each is dismissed on separate
4  grounds, as described below.

5   2.   <u>Count Two: Violation of Cal. Civ. Code § 2923.6
6           (c) and (d)</u>

7  "If a borrower submits a complete application for a first
8  lien loan modification offered by, or through, the borrower's
9  mortgage servicer, a mortgage servicer, mortgagee, trustee,
10 beneficiary, or authorized agent shall not record a notice of
11 default or notice of sale, or conduct a trustee's sale, while the
12 complete first lien loan modification application is pending."
13 Cal. Civil Code § 2923.6(c).  Plaintiffs allege that they
14 submitted a complete modification as of April 8, 2016.  SAC at
15 ¶ 42.

16     Defendants argue that Plaintiffs' application was never
17 "pending" because Defendants refused to accept or acknowledge the
18 modification application.  MTD at 6.  Plaintiffs assert that they
19 need only allege they submitted a "complete" modification
20 application under the code section.  Opp. at 3.  Defendant
21 directs the Court's attention to Cal. Civ. Code § 2924.10, which
22 addresses "Submission of first lien modification document;
23 written acknowledgment of receipt" and defines the term
24 "complete."  Because an application is deemed "'complete' when a
25 borrower has supplied the mortgage servicer with all documents
26 required by the mortgage servicer within the reasonable
27 timeframes specified by the mortgage servicer," Defendants
28 contend that Plaintiff will be unable to allege submission of a

6

1  complete application in these circumstances.  See Cal. Civ. Code
2  § 2923.6(h) (defining the same).
3      Plaintiffs' claim under § 2923.6(c) and (d) must be
4  dismissed as insufficiently pled.  "A bald allegation that a
5  party submitted 'complete' loan modification applications—without
6  sufficient supporting factual allegations—is a conclusory
7  statement, and the Court does not rely on such assertions in
8  evaluating the sufficiency of Plaintiff's complaint." Stokes v.
9  CitiMortgage, Inc., No. CV 14-00278 BRO (SHx), 2014 WL 4359193,
10 at *7 (C.D. Cal. Sep. 3, 2014); see also Cornejo v. Ocwen Loan
11 Servicing, LLC, 151 F. Supp. 3d 1102, 1111 (E.D. Cal. 2015).
12 Plaintiffs failed to allege any facts other than the conclusory
13 statement that they submitted a complete application.  See SAC at
14 ¶ 42.
15     Furthermore, given the code's definition, Plaintiffs cannot
16 allege that they submitted a complete application because their
17 application was never acknowledged.  Plaintiffs do not provide
18 the Court with a single case in which a plaintiff proceeded on a
19 claim for a violation of § 2923.6(c) or (d) where the defendant
20 never acknowledged the plaintiff's application.
21     Count Two is dismissed without leave to amend.
22        3.   Count 3: Intentional Misrepresentation
23    To state a claim for intentional misrepresentation a
24 plaintiff must show "(1) a misrepresentation, (2) knowledge of
25 falsity, (3) intent to induce reliance, (4) actual and
26 justifiable reliance, and (5) resulting damage." Chapman v.
27 Skype Inc., 220 Cal. App. 4th 217, 230–31 (2013).  Federal Rule
28 of Civil Procedure 9(b) applies to state-law claims that sound in

7

1  fraud and requires the plaintiff to state with particularity the
2  circumstances constituting fraud.  <u>Vess v. Ciba-Geigy Corp. USA</u>,
3  317 F.3d 1097, 1103 (9th Cir. 2003).  "[T]he circumstances
4  constituting the alleged fraud [must] be specific enough to give
5  defendants notice of the particular misconduct so that they can
6  defend against the charge and not just deny that they have done
7  anything wrong."  <u>Id.</u> at 1106 (citations and quotation marks
8  omitted).  The claim "must be accompanied by the who, what, when,
9  where, and how of the misconduct charged."  <u>Id.</u> (citations and
10 quotation marks omitted).

11      Plaintiffs allege that, through telephone conversations, SPS
12 employees misrepresented to Plaintiffs that they were not parties
13 to the Note.  SAC at ¶ 53.  Plaintiffs fail to provide the
14 details necessary under the heightened pleading standard.  For
15 instance, Plaintiffs have not alleged when these conversations
16 occurred, how many conversations occurred, or how the
17 misrepresentations were conveyed.

18      More fatal to Plaintiffs' claim is their theory of reliance.
19 Plaintiffs claim that they relied on the representation that they
20 were not parties to the loan, but Plaintiffs did not take any
21 action or change their legal position due to that representation.
22 As Plaintiffs put it, they "could not avail [themselves] of any
23 option to prevent the foreclosure trustee sale," but that is
24 because all of their remedies "would necessarily involve SPS who
25 refused to communicate with [P]laintiffs on any option to avoid
26 foreclosure."  SAC at ¶¶ 53-54.  Their problem is that SPS—
27 wrongly or rightly—did not acknowledge them as parties to the
28 Note and thus would not work with them on their foreclosure

8

1 avoidance options.  Plaintiffs were not induced to act; as
2 alleged, they were wrongfully denied relief from their loan
3 servicer.  Plaintiffs do not cite a single case in support of
4 this reliance theory.
5    Count Three is thus dismissed without leave to amend.

        4.   Count 4: Negligent Misrepresentation

"The elements of negligent misrepresentation are similar to intentional fraud except for the requirement of scienter; in a claim for negligent misrepresentation, the plaintiff need not allege the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." Charnay v. Cobert, 145 Cal. App. 4th 170, 184 (2006). "[R]esponsibility for negligent misrepresentation rests upon the existence of a legal duty, imposed by contract, statute or otherwise, owed by a defendant to the injured person." Eddy v. Sharp, 199 Cal. App. 3d 858, 864 (1988).

Defendants correctly argue that because the elements of intentional and negligent misrepresentation overlap, this claim fails for the reasons described above.  For those reasons, Count Four, too, is dismissed without leave to amend.

        5.   Count 5: Breach of Implied Covenant of Good Faith and Fair Dealing

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 371 (1992). "The covenant of good faith finds particular application in situations where one party is invested with a

9

1  discretionary power affecting the rights of another. Such power
2  must be exercised in good faith." Id. at 372.  It is "designed
3  to effectuate the intentions and reasonable expectations of the
4  parties reflected by mutual promises within the contract." Nein
5  v. HostPro, Inc., 174 Cal. App. 4th 833, 852 (2009).  "The
6  covenant also requires each party to do everything the contract
7  presupposes the party will do to accomplish the agreements
8  purposes." Thrifty Payless, Inc. v. Americana at Brand, LLC, 218
9  Cal. App. 4th 1230, 1244 (2013).  Because a breach of the
10 covenant is it a breach of contract, a plaintiff must allege
11 (1) a contract, (2) plaintiff's performance (or excuse),
12 (3) defendant's breach, and (4) resulting damages to the
13 plaintiff.  See id. at 1244.
14     The only alleged breach of the implied covenant is
15 Defendants' failure to acknowledge Plaintiffs as parties to the
16 Note.  SAC at ¶ 70.  This claim is also insufficiently pled.
17 Plaintiffs have not alleged that they performed or were excused
18 from performance.
19     The SAC is also deficient with respect to causation and
20 damages.  "[N]o liability attaches if the damages sustained were
21 otherwise inevitable or due to unrelated causes." Rossberg v.
22 Bank of Am., N.A., 219 Cal. App. 4th 1481, 1499 (2013) (citations
23 and quotation marks omitted).  Plaintiffs must establish a
24 complete causal relationship and allege specific facts showing
25 "how the actions he or she took in reliance on the defendant's
26 misrepresentations caused the alleged damages." See id.
27 Plaintiffs have not alleged facts indicating they would have been
28 successful in pursuing the remedies they list but for Defendants'

10

failure to acknowledge them as parties to the Note. Although Plaintiffs allege that they would have qualified for a loan modification or would have been allowed to enter into a short sale transaction, SAC at ¶ 53(d), these allegations do not establish a sufficiently plausible, causal connection between the alleged misrepresentation and damages. See Dick v. American Home Mortg. Servicing, Inc., No. 2:12-00201 WBS CKD, 2014 WL 172537 (E.D. Cal. Jan. 15, 2014) ("[Plaintiffs] do not allege any facts suggesting how pursuing these hypothetical avenues could have prevented the foreclosure of their home. . . . [T]he allegations do not allow for a plausible inference that plaintiffs would have been able to make the payments on the loan, or that these purported alternative remedies would have been successful in stemming the eventual foreclosure."). The Court cannot presume that the injuries complained of were not otherwise inevitable.

Count Five is also dismissed without leave to amend.

### 6. Count 6: Negligence

To state a claim for negligence, a plaintiff must show (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury. Mendoza v. City of L.A., 66 Cal.App.4th 1333, 1339 (1998). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." Vasquez v. Residential Investments, Inc., 118 Cal. App. 4th 269, 278 (2004).

Defendants argue that they do not owe Plaintiffs a duty of care due to the "general rule [that] a financial institution owes no duty of care to a borrower when the institution's involvement

1  in the loan transaction does not excess the scope of its
2  conventional role as a mere lender of money." MTD at 10 (citing
3  <u>Nymark v. Heart Fed. Savings & Loan Assn.</u>, 231 Cal. App. 3d 1089,
4  1096 (1991)).  They direct the Court to a number of district
5  court decisions following the principle—set out in <u>Lueras v. BAC
6  Home Loans Servicing, LP</u>, 221 Cal. App. 4th 49 (2013)—that a
7  lending institution does not owe a duty of care when
8  renegotiating a loan because renegotiation falls within the
9  conventional role of money lender.
10      While authority on this issue is divided, this Court has
11 previously found that lending institutions do have a duty toward
12 borrowers in processing a loan modification application.  <u>See
13 Hsin-Shawn Sheng v. Select Portfolio Servicing, Inc.</u>, No. 2:15-
14 cv-0255-JAM-KJN, 2015 WL 4508759, at *5 (E.D. Cal. July 24,
15 2015).  Thus, Defendants' argument in reliance on decisions going
16 the other direction does not defeat this claim.
17      Defendants also argue that they did not breach a duty of
18 care because Plaintiffs were not parties to the Note.  The Court
19 accepts Plaintiffs' allegations that they signed the Note and
20 thus this argument fails as well.
21      Although Defendants did not reassert the point, their
22 argument that Plaintiff has not adequately pled causation and
23 damages applies with the same force on this claim, which repeats
24 the "causation/damages" allegations of the previous claims
25 verbatim.  Thus, Count Six is dismissed without leave to amend.
26          7.   <u>Count 7: Violation of Cal. Civ. Code § 17200</u>
27      California's Unfair Competition Law ("UCL") defines unfair
28 competition as any unlawful, unfair, or fraudulent business

practice and any unfair, deceptive, untrue or misleading advertising. Cal. Bus. & Prof. Code § 17200. A UCL claim may be based on the violation of another law or on a practice that is unfair but not independently unlawful. See Olszewski v. Scripps Health, 30 Cal. 4th 798, 828 (2003). Actions for relief under the UCL may be brought by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition. Cal. Bus. & Prof. Code § 17204.

Plaintiffs argue that the violations alleged in Counts 1-6 constitute unlawful or unfair businesses practices under the UCL. SAC at ¶ 83; Opp. at 8. The Court has found the allegations insufficient to support those claims and, in turn, they will not support Plaintiffs' UCL theory as pled. This claim, too, is dismissed without leave to amend.

### 8. Count 8: Intentional Infliction of Emotional Distress

The elements for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or with reckless disregard of the probability of causing, emotional distress; (2) plaintiff suffered severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct. Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009). "Outrageous conduct has been defined as conduct that is so extreme as to exceed all bounds of that usually tolerated in a civilized community and so extreme and outrageous as to go beyond all possible bonds [*sic*] of decency, and to be regarded as atrocious, and utterly intolerable in a

1  civilized community." Bogard v. Emp'r Casualty Co., 164 Cal.
2  App. 3d 602, 616 (1985) (internal citations and quotation marks
3  omitted).  "Severe emotional distress means emotion distress of
4  such substantial quality or enduring quality that no reasonable
5  person in civilized society should be expected to endure it."
6  Id. at 1051.

7      With respect to the second element, Plaintiffs' allegations
8  are plainly insufficient.  Plaintiffs simply state that "[they]
9  did, in fact, suffer extreme and/or severe emotional distress."
10 SAC at ¶ 89.  Plaintiffs fail to offer any facts that would show
11 the nature or extent of their distress.  See Hamilton v.
12 Prudential Fin., No. 2:07-cv-00944-MCE-DAD, 2007 WL 2827792 (E.D.
13 Cal. Sep. 27, 2007) (finding that plaintiff's allegations that he
14 suffered from depression, frustration, nervousness, and anxiety
15 lacked the necessary specificity to show their nature or extent).
16 This cause of action fails on this basis.

17     Furthermore, the allegations could not sustain an outrageous
18 conduct finding.  Although "outrageous conduct" is a question of
19 fact, the Court may still dismiss the claim if the allegations
20 could not sustain such a finding.  In the case Plaintiffs cite,
21 Ragland v. U.S. Bank Nat. Assn., the court denied summary
22 judgment where the plaintiff alleged that the defendant had
23 induced her to skip a loan payment, later refused to accept loan
24 payments, and then sold her home in foreclosure.  209 Cal. App.
25 4th 182, 204 (2012).  Other courts, however, have dismissed the
26 claim at the pleading stage, even where the complaint alleged
27 wrongful foreclosure or negligent behavior that led to a
28 foreclosure.  See Martinez v. Flagstar Bank, FSB, No. 2:15-cv-

14

1  01934-KJM-CKD, 2016 WL 3906810 (E.D. Cal. Jul. 19, 2016)
2  (dismissing the IIED claim where plaintiffs alleged that
3  defendants lost and mismanaged their loan modification
4  application materials, promised not to have a foreclosure sale,
5  and then sold the home in foreclosure anyway); Aguinaldo v. Ocwen
6  Loan Servicing, LLC, 5:12-cv-01393-EJD, 2012 WL 3835080 (N.D.
7  Cal. Sep. 4, 2012) (dismissing the IIED claim where plaintiffs
8  alleged that defendant promised not to foreclose on their home,
9  plaintiffs relied on that promise in choosing not to pursue
10 alternative measures to prevent foreclosure, and defendant
11 foreclosed anyway).  Although this case is similar to Ragland in
12 that the lawfulness of foreclosure is in dispute, Defendants are
13 not alleged to have engaged in the kind of trickery presented in
14 the Ragland case.  Defendants' alleged behavior does not approach
15 the level of outrageousness necessary to survive a motion to
16 dismiss.

    Count Eight is dismissed without leave to amend.

          9.    Count 9: Interference with Prospective Advantage

    A claim for intentional interference with prospective
economic advantage has five elements: "(1) an economic
relationship between plaintiff and a third party, with the
probability of future economic benefit to the plaintiff;
(2) defendant's knowledge of the relationship; (3) an intentional
act by the defendant, designed to disrupt the relationship;
(4) actual disruption of the relationship; and (5) economic harm
to the plaintiff proximately caused by the defendant's wrongful
act, including an intentional act by the defendant that is
designed to disrupt the relationship between the plaintiff and a

third party." Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937, 944 (2008).

Defendants argue that this claim fails because Plaintiffs have failed to allege any economic relationship between themselves and any third party or allege economic harm or injury. Plaintiff did not oppose dismissal of this claim. Count Nine is thus dismissed without leave to amend.

          10.   Count 10: Establishment of Lost or Destroyed Promissory Note

Defendants argue that Plaintiffs' final cause of action is time barred because the statute of limitations began running from the date of the alleged execution of the Note. MTD at 14. Plaintiffs argue that the statute of limitations should run from the date Plaintiffs discovered that the Note did not exist. Opp. at 10.

"The discovery rule protects those who are ignorant of their cause of action through no fault of their own. It permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue." April Enterprises, Inc., v. KTTV, 147 Cal. App. 3d 805, 832 (1983). "A plaintiff seeking the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." Stocco v. Gemological Inst. of Am., Inc., No. 12-cv-1291 WQH (DHB), 2015 WL 472143 at *7 (S.D. Cal. Feb. 5, 2015) (citations and quotation marks omitted).

The SAC does not allege when Plaintiffs made the discovery. Plaintiffs knew of this deficiency and failed to amend their

16

complaint accordingly. See Opposition to Defendants' Motion to Dismiss, ECF No. 28, at 14. Count Ten is dismissed without leave to amend.

## III. ORDER

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss and the case is DISMISSED WITH PREJUDICE:

IT IS SO ORDERED.

Dated: March 17, 2017

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

17